IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERI SCHWEERS, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MONTGOMERY PUBLIC SCHOOLS, )<br>)<br>    Defendant. ) | CASE NO. 2:05-cv-852-MEF<br>(WO) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff brings suit against Defendant Montgomery Public Schools, alleging that it discriminated against her in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff seeks compensatory and punitive damages, injunctive relief, and attorney's fees and costs. This cause is presently before the Court on Defendant's Motion for Summary Judgment (Doc. # 15). The Court has carefully considered the pleadings, briefs, and evidentiary submissions. For the reasons stated herein, Defendant's motion is due to be GRANTED.

**I.  Jurisdiction and Venue**

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 621, *et seq.* (ADEA), and 42 U.S.C. § 12101 *et seq.* (ADA). The parties contest neither personal jurisdiction nor venue, and the Court finds a sufficient factual basis for each.

## II. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party

2

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  Facts and Procedural History

The Court has carefully considered all documents submitted in support of and in opposition to the motion. Viewed in the light most favorable to Plaintiff, the submissions of the parties establish the following relevant facts:

The process of hiring teachers for kindergarten through third grade in the Montgomery County Schools begins with an application to the central office. All applicants are interviewed by Director of Certified Personnel Carolyn Hicks ("Hicks"), who is over the age of sixty-five. After the interview, if there is no problem with the applicant's certification or background, Hicks puts the applicant's name and phone number on a list. She sends that list to the schools, and the principal selects interviewees from the list. The central office

asks that the principal interview three to five candidates, but sometimes a principal will interview more than that. Occasionally, a principal will want to hire someone not on the list, but that person is still required to go through the central office. After the principal interviews a candidate and decides that she wants to hire the candidate, the principal makes a recommendation to the superintendent. The superintendent makes the ultimate hiring decision, but almost always relies on the principal's recommendation.

The principal makes the decision to nonrenew a teacher's employment at the end of the school year. Each principal meets with Hicks, and they review the nonrenewal recommendations and prepare a write-up to send to the school board for approval. It would be highly unusual, however, for a principal's recommendation to be rejected for either hiring, assuming the candidate is on the qualified list, or nonrenewal.

The school system uses the Alabama Professional Education Personnel Evaluation Program ("PEPE") to evaluate a teacher's performance in the classroom, although it is not used in hiring or nonrenewal decisions. It is a "snapshot" of what is going on in the teacher's classroom, with a supervisor making an announced or unannounced visit to the classroom and observing the teacher's performance. Scores range from 1 to 4. A score of 1 means that the teacher's performance is unsatisfactory; 2 means that the performance needs improvement; 3 means that the performance could be improved in some areas, but that current performance is clearly acceptable; and 4 means that the teacher demonstrates excellence and that no area for improvement is readily identifiable.

Plaintiff is currently forty-eight years old. She has a Professional Educator Certificate

from the Alabama Department of Education for Early Childhood, Preschool through Third Grade. From 1981 through 1989, and from 1993 until 2001, Plaintiff taught in the Autauga County Schools. From 1989 until 1991, she taught in the Montgomery County Public Schools. During the 1992-1993 school year, she taught in the Monroe County Schools.

Plaintiff returned to teach in the Montgomery County Schools for the 2001-2002 school year. During that year, she taught third grade at Halcyon Elementary. Both Pam Morgan ("Morgan"), the principal, and Shirley Brooks ("Brooks"), the assistant principal, are older than Plaintiff. Plaintiff never had any conversations with either Morgan or Brooks regarding her age. She felt that she had a good relationship with Morgan. Based on the PEPE records submitted by Plaintiff, she scored mostly 3s with some 4s. However, she had a number of 2s, indicating a need for improvement, including the areas of preparing resources, giving clear directions, developing the lesson, and managing class time. At the end of the school year Plaintiff was nonrenewed.

Plaintiff obtained a position teaching first grade at MacMillan International Academy for Humanities, Communications, and Technology, a magnet technology school, for the 2002-2003 school year. Plaintiff did not have any problems with Cathy Maxey ("Maxey"), the principal, and did not have any problems with her evaluations. Maxey, who is older than Plaintiff, never did or said anything to lead Plaintiff to believe that she had a negative impression about Plaintiff because of her age or about older teachers in general. Based on the PEPE records presented by Plaintiff, she received mostly 3s with two 4s. She also received several 2s, indicating a need for improvement, in the areas of demonstrating

5

knowledge, communicating high expectations, and expressing a positive affect. After the 2002-2003 school year, Maxey decided not to renew Plaintiff's employment and hired a younger teacher to replace Plaintiff.

Following her nonrenewal at MacMillan, Plaintiff talked to Hicks about being placed at another school. Hicks said that it would be difficult to place her in another position with her two previous nonrenewals. Plaintiff talked with some principals that summer, but did not have any interviews. Plaintiff talked with Brooks, who was then the principal at Halcyon, but was not hired there. Plaintiff felt that she was not hired as a result of her age because the teachers that were hired were much younger. She also talked to the principal of Wares Ferry Road Elementary and was not offered a position, but Plaintiff does not believe that this was because of her age.

Plaintiff telephoned Hicks several times during the summer of 2003 seeking another position. During one of the calls, Hicks asked Plaintiff if she would work as a substitute at Morningview Elementary, and Plaintiff agreed to take the position. She taught third grade for four days. On Plaintiff's fourth and final day at Morningview, Hicks called Jerry Hooks, the principal at Morningview, and told him that she had found Plaintiff a position to interview for at Vaughn Road Elementary.

Plaintiff interviewed for the Vaughn Road Elementary position with the principal, Linda Sexton ("Sexton"), who is older than Plaintiff. She was offered and accepted the position. Plaintiff never had any problems with Sexton and was never reprimanded or corrected by her. When she began at Vaughn Road Elementary, Plaintiff took six all-day

Saturday classes on Read Well, a reading program that was implemented that year. Dr. Nichols, a reading coach from the central office, visited Plaintiff's class and told her that she was doing an excellent job with Read Well. Based on the PEPE records submitted by Plaintiff, her PEPE scores at Vaughn Road were mostly 3s with several 4s. She also received several 2s, including in areas of seeking outside help for students, involving students, managing class time, developing the lesson, providing practice/summarization. Plaintiff also received a certificate "recogniz[ing] [her] as an Outstanding Reading Teacher," from the Montgomery Public Schools Department of Curriculum & Instruction. Defendant sent Plaintiff a letter dated May 19, 2004, informing her that her contract of employment would not be renewed.

    About a month after Plaintiff was nonrenewed, Sexton retired and was replaced by Brenda Lindsey ("Lindsey"), who is over fifty years of age. When Plaintiff went to turn in her key, Lindsey asked her if she would be willing to work at Vaughn Road Elementary, and Plaintiff responded that she would. Lindsey said that she thought she would have a kindergarten teacher position open, but that she would have to talk to "downtown." When Plaintiff talked to her again, Lindsey said that she couldn't offer Plaintiff a position and that it was out of her hands. Lindsey states that she was not interested in hiring Plaintiff because she had been nonrenewed three times by three different principals, and if she were hired she would gain tenure. Lindsey states that she does not hire teachers without tenure who will immediately gain tenure if hired, because if she has problems with their performance, she will not have the opportunity to recommend their nonrenewal.

Following her nonrenewal, during the summer of 2004, Plaintiff met with Hicks. Hicks told Plaintiff that it would be difficult to place her with three nonrenewals. She told Plaintiff that maybe she should go to another system and call her back the next year. However, Plaintiff's name was put on the list of applicants from which the principals could choose. Several principals showed some interest in considering Plaintiff that summer. She interviewed with Susan Crockett, Jason Lowe, and Jerry Hooks. None of the principals recommended hiring her. Several of the principals told her that the decision was out of their hands.

Hicks sent Plaintiff to interview at Thelma Smiley Morris Elementary, where she interviewed with the principal, Sophia Johnson ("Johnson"). She did not offer Plaintiff a job, but asked what she would be doing the next week. Plaintiff said that she would "be around" and gave Johnson her cell phone number. Plaintiff never heard back and never followed up with Johnson. The assistant principal at Thelma Smiley Morris Elementary called Plaintiff on the Friday before school started, asking her to go to an interview in the next hour or two. Plaintiff said that she could not make the interview because she had a part time job, and asked whether she could interview on Monday. The assistant principal said that the job would be filled by then. Plaintiff had no other interviews during the summer of 2004.

Plaintiff told Hicks that she desperately needed a job. During the first week of school, Hicks called Plaintiff about a substitute position teaching kindergarten at Highland Gardens Elementary for a teacher on maternity leave. Plaintiff accepted the position, but

8

resigned after four weeks because she could see that the school system had no plans to hire her full-time. She knew that there were job openings and heard that they were being filled, mostly by younger teachers right out of school. Plaintiff claims that she was not considered for these positions.

Plaintiff filed her EEOC charge on November 29, 2004, and her right-to-sue letter was dated July 1, 2005. On September 2, 2005, she filed suit in this Court (Doc. # 1). Defendant filed a Motion for Summary Judgment on October 5, 2006 (Doc. # 15).

## IV. Discussion

Plaintiff has abandoned her ADA claim (*see* Doc. 21 at 1). The Court will therefore address only her ADEA claim.

*A. Failure to Exhaust Administrative Remedies*

"As a general rule, an employee who wishes to sue his employer for age discrimination must first file an administrative charge of discrimination with the EEOC." *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001). "The period in which a person must file a complaint with the EEOC depends on whether a state is a 'deferral state' under the ADEA." *Jones v. Dillard's, Inc.,* 331 F.3d 1259, 1263 (11th Cir. 2003). Deferral states have a state agency equivalent to the EEOC. *Id.* (citing 29 U.S.C. §§ 626(d), 633). In those states, an age discrimination claim must be filed with the EEOC within 300 days after the alleged unlawful practice occurred. *Id.* (citing § 626(d)(2)). In states without a state agency equivalent to the EEOC, the charge must be filed within 180 days. *Id.* (citing § 626(d)(1)). Alabama is not a deferral state, so, in order to be timely, Plaintiff's ADEA

9

claim must have been brought to the EEOC within 180 days of the adverse employment action challenged in the claim. *See id.*

Each discrete discriminatory act such as termination or refusal to hire "starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1076 (M.D. Ala. 2003) (applying *Morgan* to ADEA claims). Discrete acts that fall outside the statutory time period are time-barred, even if they are related to acts falling within that time period. *Morgan*, 536 U.S. at 113.

The decisions to nonrenew Plaintiff at the end of each school year were discrete acts. As such, only those that occurred within 180 days of Plaintiff's filing of her administrative charge of discrimination with the EEOC are actionable. Plaintiff's notice of nonrenewal was dated May 19, 2004. The date before which no discrete act is actionable, 180 days prior to the filing of the EEOC charge, was June 2, 2004. The Court thus finds that all employment actions, except for the decision not to hire Plaintiff for the 2004-2005 school year, are time-barred. However, the Court will consider relevant prior acts as background evidence for her timely claim. *See Morgan*, 536 U.S. at 113.

B. Merits

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

10

age." 29 U.S.C. § 623(a)(1).

> When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision . . . . That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993)).  Courts have often recognized that this inquiry implicates analyses of the mental processes of employers for which there is seldom eye-witness testimony.  *See id.*  Consequently, they have applied some variation on the framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny to analyze ADEA cases brought primarily on circumstantial evidence.  *Reeves,* 530 U.S. at 141 (collecting cases); *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir.), *cert. denied,* 525 U.S. 962 (1998).  Thus, an employee bringing a claim under the ADEA must initially establish a prima facie case of discrimination through one of three methods: presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satisfying the analysis set forth in *McDonnell Douglas* and its progeny, or introducing statistical evidence of discrimination.  *See, e.g., Walker v. NationsBank of Fla., N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995).  Here, Plaintiff has presented no direct or statistical evidence of discriminatory intent.

As to circumstantial evidence of discrimination, under the *McDonnell Douglas* analysis, the plaintiff must first establish a prima facie case of discrimination.  In the context

11

of age discrimination, an employee must produce evidence that (1) she is a member of a protected group of persons between the ages of forty and seventy; (2) she was qualified for the position held; (3) she was subjected to an adverse employment action; and (4) a substantially younger person filled the position that she sought or from which she was discharged. *See Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1359 (11th Cir. 1999); *Turlington*, 135 F.3d at 1432. "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam).

The Court is satisfied that Plaintiff was over the age of forty and that a substantially younger teacher, Abigail Garrard, was hired to replace Plaintiff at Vaughn Road Elementary. However, it finds that Plaintiff has not met her burden of demonstrating a prima facie case as to any of the other positions she sought for the 2004-2005 year. Plaintiff does not provide evidence that the other principals she interviewed with following her May 2004 nonrenewal hired substantially younger teachers for the positions she sought. In her Response, with respect to her prima facie case, Plaintiff discusses only the May 2004 nonrenewal and Defendant's failure to hire her for the subsequent school year. Because Plaintiff has not met the prima facie case for the failure-to-hire claim except for the Vaughn Road Elementary position, and because the May 2004 nonrenewal claim is time-barred, the Court will address only the failure-to-hire claim with respect to the Vaughn Road Elementary position.

The parties dispute the other two elements of Plaintiff's prima facie case. Defendant argues that Plaintiff was not subjected to an adverse employment action. It argues that other

12

principals were interested in hiring Plaintiff, and she did not follow up with them. However, viewing the facts in the light most favorable to Plaintiff, the Court concludes that her failure to be hired at Vaughn Road Elementary for the 2004-2005 school year was an adverse employment action. Defendant also contends that Plaintiff was not qualified for the position. However, viewing the facts in the light most favorable to Plaintiff, the Court concludes that she has met her burden as to her qualification for the position.

Once a plaintiff establishes the requisite elements of the prima facie case, the defendant has the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action. *See, e.g., Holifield*, 115 F.3d at 1564 (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)). The employer's burden is "exceedingly light." *Holifield,* 115 F.3d at 1564 (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)). This burden is one of production, not persuasion, and consequently the employer "need only produce evidence that could allow a rational fact finder to conclude that [the employee's] discharge was not made for a discriminatory reason." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998).

Defendant's proffered reason for the challenged employment action is that no principal recommended that Plaintiff be hired for any position for the 2004-2005 school year. It also puts forward Lindsey's sworn statement that she did not recommend Plaintiff because she had been nonrenewed three times by three different principals. Had Lindsey recommended Plaintiff for hire and she was hired, she would not have been able to nonrenew her for poor performance because Plaintiff would have gained tenure on her first

13

day of work. The Court concludes that Defendant has presented a legitimate, nondiscriminatory reason for its failure to hire Plaintiff.

Thus, the burden now returns to Plaintiff to supply "evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis v. Qualico Miscellaneous, Inc.,* 161 F. Supp. 2d 1314, 1322 (M.D. Ala. 2001) (citing *Chapman*, 229 F.3d at 1024). "Because the plaintiff bears the burden of establishing pretext, [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. Gen. Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148.

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own

14

perceptions of his performance." *Holifield*, 115 F.3d at 1565.  As long as an employer's beliefs were honest, they can be mistaken without it implying that the employer acted with discriminatory motive.  *See Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one . . . . [O]ur sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." (quotation omitted)).

An ADEA plaintiff "faces a difficult burden [where] all of the primary players behind his termination . . . were well over age forty and within the class of persons protected by the ADEA."  *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).  Lindsey, who did not recommend Plaintiff for employment, was over the age of fifty.  Moreover, to the extent that Plaintiff looks to her nonrenewals for evidence of pretext, all of the principals who gave her nonrenewals were over the age of forty and older than Plaintiff.

To meet her burden, Plaintiff must show that Defendant's reason that it did not hire her was pretext.  To do so, she presents evidence that Defendant's claims regarding her performance are false.  She presents affidavits from parents of children in her classes attesting to her teaching skills.  She also provides her PEPE evaluations, which she claims demonstrate her good performance.  She further relies on the certificate she received during the 2003-2004 school year which recognized her as an outstanding reading teacher.

The evidence Plaintiff presents is not sufficient to show that Defendant's proffered reason is a pretext for discrimination.  She provides no evidence that Lindsey's failure to recommend that she be hired for the 2004-2005 school year was based on her age.  Plaintiff

15

has not demonstrated that Lindsey was aware of the opinions of the parents who provided the affidavits she has submitted.  Given that the employment decision at issue was made by someone wholly unconnected to the decision makers for her three nonrenewals, it is not enough to show that her three nonrenewals may have been, or even were, based on age discrimination.  Even assuming *arguendo* that Plaintiff's nonrenewals were based on her age, Plaintiff must show some connection between the alleged prior discriminatory acts and the decision she is challenging, that is, the decision not to hire her for the 2004-2005 school year. *Cf. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999) ("[C]onclusive assertion[s] [that prior incidences of alleged discrimination demonstrate pretext are] not probative of pretext unless the prior incidences . . . can somehow be tied to the employment actions disputed in the case at hand.").  Plaintiff has failed to show that Lindsey was aware that Plaintiff's nonrenewals were based on age discrimination.  She has further failed to demonstrate that the decision not to hire her was not based on her three nonrenewals and the fact that she would have gained tenure on the first day of school had she been hired.  A plaintiff's conclusory allegations are simply not sufficient to demonstrate discrimination by the defendant.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("[T]he plaintiff must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice.").  Plaintiff has failed to meet her burden to show that Defendant's legitimate, nondiscriminatory reason was pretext for discrimination.

## V.  Conclusion

For the reasons set forth above, it is hereby ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc. # 15) is GRANTED.

(2) The trial and pretrial hearing are CANCELED.

(3) This Court will enter a separate final judgment taxing costs.

DONE this the 8th day of January, 2007.

                                            /s/ Mark E. Fuller
                                    CHIEF UNITED STATES DISTRICT JUDGE